# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHMOND D. TIGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-12-464-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Richmond D. Tiger requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]"  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 25, 1965, and was forty-five years old at the time of the administrative hearing (Tr. 32, 120). He completed the twelfth grade, and has past relevant work as a fireplace helper, janitorial worker, and pizza cook (Tr. 27, 149). The claimant alleges that he has been unable to work since June 26, 2009, because of bipolar disorder, psychotic features of obsessive compulsive disorder, inability to concentrate, heart problems, high blood pressure, high cholesterol, chest pains, knee injury with past reconstructive surgery, arthritis, acid reflux, and painful knots on his hand (Tr. 148).

**Procedural History**

On June 1, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ J. Dell Gordon conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 16, 2011 (Tr. 11-29). The Appeals Council denied review, so the ALJ's opinion represents the final decision of the Commissioner for purposes of this appeal. See 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform medium work as defined by 20 C.F.R. § 416.967(b), limited to simple tasks with routine supervision and

no interaction with the general public (Tr. 20). The ALJ concluded that although the claimant could not return to past relevant work, he was nevertheless not disabled because there was other work that he could perform, *i. e.*, hand packer, small parts assembler, and garment assembler (Tr. 28).

**Review**

The claimant contends that the ALJ erred: (i) because his opinion was so deficient it cannot serve as substantial evidence to support a denial of benefits; (ii) by failing to evaluate medical evidence properly, particularly evidence from his counselor, James Fox; and (iii) by failing to account for his obesity. Because the Court finds that the ALJ failed to properly evaluate evidence as to the claimant's mental impairments, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The medical record contains substantial evidence that the claimant suffers from bi-polar disorder and obsessive-compulsive disorder. "Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly." *Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To properly apply this special psychological review technique (PRT), the ALJ must first determine if the claimant has a "medically determinable mental impairment," 20 C.F.R. § 416.920a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of functioning in four broad areas:

(i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). *See also Cruse*, 49 F.3d at 617. Furthermore, the ALJ must specifically document his PRT findings. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). *See also* 20 C.F.R. §§ 416.920a(e)(4) ("At the administrative law judge hearing . . . the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)").

The ALJ attempted to apply the PRT in this case but failed to do so properly. For example, instead of applying the PRT at the outset to determine whether the claimant had any medically determinable mental impairments and then rating their severity according to the PRT, the ALJ simply found at step two that the claimant's severe impairments were "bi-polar disorder" and "manic disorder with psychotic features" (Tr. 13). It is not entirely clear what the ALJ intended here; none of the medical sources cited by the ALJ assessed the claimant with "manic disorder with psychotic features," and most *did* assess him with obsessive-compulsive disorder, which the ALJ did not determine to be a severe impairment. Nor did the ALJ discuss at this stage what weight he was giving to any of

those medical sources, *see, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995), which only heightens the difficulty in determining exactly what the ALJ had in mind.

In any event, the ALJ made no mention of the PRT until step three, when he used it determine that none of the claimant's mental impairments met a listed impairment. In reaching this conclusion, the ALJ found that the claimant had only moderate limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. These findings lent support to the ALJ's already-reached conclusion that the claimant's mental impairments were severe, *see* 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe[.]"), but the ALJ failed to discuss relevant evidence at odds with these findings, *e. g.*, medical sources indicating that the claimant's limitations were in some areas marked. But on the whole, the record does not seem to support any finding that the claimant's severe mental impairments met any listing.

Because the claimant's severe mental impairments did not meet any listing, the sequential evaluation proceeds to step four, where the ALJ was required to determine the claimant's mental (and physical) RFC. *See* 20 C.F.R. § 416.920a(d)(3) ("If we find that

you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). It is in this regard that the ALJ's written opinion was the most difficult to follow; for example, although he inexplicably revisited steps two and three, the ALJ never again mentioned his findings in the PRT when considering the degree of mental limitation suffered by the claimant. The ALJ *did* eventually find that the claimant's mental impairments required corresponding limitations in his RFC: "The Administrative Law Judge added some mental residual functioning and as such, the claimant can perform simple tasks with routine supervision; can relate to supervisors and peers on a superficial work basis and can adapt to a work situation" (Tr. 25), but the ALJ *did not* cite evidence supporting this finding or explain how the claimant's moderate difficulties in activities of daily living, social functioning, and concentration, persistence or pace translated into the limitations included in the RFC.

Furthermore, the ALJ chose to ignore other probative evidence as to the limiting nature of the claimant's mental impairments. For example, the claimant was assessed with some very low GAF scores, only one of which exceeded 50 upon discharge from a five-day hospital stay. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (*e. g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e. g.*, no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," as the court stated in *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed.

Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's consistently substandard GAF scores were due to occupational factors, *see, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."), not simply reject them out of hand as "a subjective, rather than objective measure [and therefore] not entitled to great weight in making disability determinations" (Tr. 17).

Because the ALJ failed to properly evaluate the claimant's mental impairments, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma